871 N.E.2d 303 (2007)
In re the Visitation of: M.S. and K.S., Grandchildren, By Next Friend Beverly R. NEWMAN, Appellant-Petitioner,
v.
K.R., Appellee-Respondent.
No. 29A02-0609-CV-753.
Court of Appeals of Indiana.
July 31, 2007.
*306 Lawrence T. Newman, Lawrence Law Firm, Indianapolis, IN, Attorney for Appellant.
Michael J. Alerding, Candace L. Sage, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee.

OPINION
BAKER, Chief Judge.
This appeal, which involves attorney fees awarded to a nonparty, stems from a grandparent visitation case in which we affirmed the trial court's judgment in an unpublished memorandum decision. In re Visitation of M.S. and K.S. by Newman, No. 29A05-0606-CV322, 860 N.E.2d 928 (Ind.Ct.App. Jan. 24, 2007), trans. denied (CV-322).[1] Appellant-petitioner Beverly R. Newman now appeals[2] the trial court's grant of attorney fees and expenses in *307 favor of appellee-respondent K.R.[3] Specifically, Newman argues that (1) the trial court erred by awarding K.R. attorney fees because Newman's opposition to K.R.'s discovery motions was substantially justified; (2) the trial court's $15,000 attorney fee award was unreasonable and excessive; and (3) Judge Steve David should have recused himself because he is biased against Newman. Finding no error, we affirm the judgment of the trial court. Additionally, we grant K.R.'s request for appellate attorney fees and remand this cause with instructions to calculate K.R.'s reasonable appellate attorney fees and order Newman to pay that amount.

FACTS

Grandparent Visitation (CV-322)
As we noted in CV-322, Newman and her daughter, Julie Sondhelm, have had an extremely tumultuous mother-daughter relationship for more than two decades. Newman, slip op. at 2-5. Sondhelm married Shahram Shirazi in May 1993, and M.S. and K.S. were born during that marriage. Sondhelm and Shirazi eventually divorced, and Sondhelm married Jeff Sondhelm in March 2003.
On June 29, 2004, Newman filed a petition seeking court-ordered grandparent visitation with M.S. and K.S. Between the date Newman filed the petition and January 26, 2005, two judges recused themselves from the case. Judge David, a trial judge from Boone County, assumed jurisdiction on March 21, 2005.
Ultimately, the trial court denied Newman's petition on May 9, 2006, ordering that Newman was not entitled to court-ordered grandparent visitation with M.S. and K.S. Newman appealed, arguing, among other things, that Judge David should have recused himself because he was biased in favor of Sondhelm. We rejected that claim, as well as Newman's other contentions with the trial court's decision, and affirmed the judgment of the trial court on January 24, 2007. Id. at 6-26.
On February 16, 2007, Newman filed a consolidated petition for rehearing and a motion requesting that Judge Robb recuse herself from the CV-322 decision. Specifically, Newman argued that Judge Robb should recuse herself because she is the chairperson of the Indiana Family Courts Task Force and Judge David is a member of the Task Force. We granted Newman's petition for rehearing for the sole purpose of allowing Judge Robb to respond to Newman's accusations and reaffirmed CV-322 in all other respects. In re Visitation of M.S. and K.S., No. 29A05-0600-CV-322, 2007 WL 842135 (Ind.Ct.App. March 20, 2007) (Newman rehearing). Judge Robb wrote:
To the extent that [Newman] is arguing that I have a special interest in protecting Judge David's reputation as an honest, impartial, competent judge by affirming his orders because we serve on the same task force, I have no more interest in protecting Judge David's judicial reputation than I do any other judge of this state.
Id. 2007 WL 842135 at *1. On April 13, 2007, Newman filed a petition for transfer with our Supreme Court, which that court denied on June 13, 2007.

K.R.'s Involvement
During the pendency of the grandparent-visitation action, Newman deposed *308 Sondhelm on January 19, 2006. According to the deposition, sometime after May 2005, M.S. told Sondhelm that K.R.'s son, J.R., had "tugg[ed] on [M.S.'s] pants" on at least two occasions. Appellant's App. p. 206. Sondhelm did not believe that J.R.'s actions constituted a sexual crime.
K.R. received a notice of deposition and a subpoena duces tecum (first subpoena) from Newman on January 14, 2006. The first subpoena scheduled K.R.'s deposition for January 19, 2006, and sought "[a]ll documents/records regarding . . . [a]ny investigations, arrests, detentions, court hearings, dispensations, incarcerations, probations, or follow-ups of and concerning [J.R.] and the sexual abuse/molestation of [M.S. and K.S.], and/or any other minor children." Appellee's App. p. 38. Upon receiving the subpoena, K.R. hired legal counsel from the Indianapolis-based law firm Bingham McHale LLP (Bingham McHale) on the next business day. On January 17, 2006, K.R.'s counsel, Michael Alerding, sent a letter to Newman's counsel,[4] arguing that it was unreasonable and oppressive to expect K.R., a nonparty to the grandparent-visitation action, to be deposed less than one week after receiving the subpoena and that, furthermore, Newman had not provided K.R. witness and mileage fees as required by Indiana Trial Rule 45.[5] Alerding asked that Newman voluntarily withdraw the subpoena and cancel the deposition.
On January 18, 2006, Newman's counsel responded, demanding that K.R.'s deposition be scheduled immediately. Alerding responded on January 20, 2006, requesting that Newman detail what information she believed K.R. would have that would be relevant to and admissible in the pending grandparent-visitation action. Newman's counsel faxed a response to Alerding on January 23, 2006, stating that he would file a motion to compel K.R.'s deposition unless the deposition was scheduled by noon that day and conducted by January 26, 2006.
On January 24, 2006, Alerding received a second notice of deposition and subpoena duces tecum for K.R. (second subpoena), purporting to schedule K.R.'s deposition for January 27, 2006, and demanding the same documents that had been listed in the first subpoena. K.R., through counsel, responded that day by filing a nonparty verified motion to quash, motion for protective order, motion for attorney fees, and request for an emergency hearing. K.R. argued that the information Newman sought to obtain was "private, privileged and statutorily protected" and "in no cogent manner relevant to Newman's grandparent visitation case." Appellant's App. p. 48. Newman filed her response on January 26, 2006, alleging that J.R. had molested M.S. As evidence, Newman submitted an unsigned letter purportedly[6] from Shirazi, an unsigned affidavit from Shirazi's girlfriend, and an e-mail Shirazi had sent to his attorney. Each of these documents contain the same accusationi.e., that J.R. "attempted to pull [M.S.'s] pants down," id. at 79, and that Newman needed to depose K.R. to "determine the actual *309 source of the inappropriate behaviors being exhibited by both [M.S. and K.S.], which have been blamed upon [Newman]," id. at 69.
On January 30, 2006, Newman filed a motion to compel K.R.'s deposition. On February 3, 2006, Sondhelm filed a motion to strike Newman's motion to compel, arguing that the trial court should strike "[a]ny and all paragraphs in both motions that state that [M.S. and/or K.S.] have been molested, sexually abused, sexually attacked, or any similar accusations [because Newman's] characterization of the events that have occurred is only an allegation that is disputed." Id. at 197.
On February 3, 2006, Newman responded to K.R.'s motion to quash, arguing that she needed to depose K.R. to prove that "[Newman] alone has steadfastly protected the best interests of the children and is not responsible for the inappropriate behaviors now exhibited by both children." Id. at 200. That same day, Newman filed a response to Sondhelm's motion to strike, arguing that K.R.'s deposition was both relevant and necessary.
On February 3, 2006, the trial court issued an order granting K.R.'s motions, quashing the notices of deposition and subpoenas duces tecum, and issuing a protective order in favor of K.R. that prohibited Newman from issuing additional deposition notices or subpoenas to K.R. Additionally, the trial court ordered that all documents and proceedings related to K.R. and J.R. in this action were to remain under seal.
On March 27, 2006, K.R. filed a request for a hearing on attorney fees. On May 26, Newman filed a verified motion for Judge David's disqualification, which was denied on June 6, 2006. On June 13, 2006, K.R. filed her hearing brief and an affidavit of attorney fees, requesting $34,883.34. The trial court conducted a hearing on June 14, 2006.
On June 23, 2006, Newman filed a second verified motion for Judge David's disqualification. Newman argued that Judge David, a Boone County trial court judge, should disqualify himself because Bingham McHalethe law firm representing K.R.also represents Boone County in unrelated matters. Newman argued that
[p]ursuant to Ind.Code § 36-2-3-10, the Boone County Commissioners may employ and fix the compensation of an attorney to represent and advise the County Commissioners, who can, by statute, make appropriations to pay county judges beyond the amounts paid by the State of Indiana. . . . As a result of its concurrent representation of Boone County and [K.R.], Bingham McHale may have undue influence over the instant proceeding. Bingham McHale's concurrent representation of Boone County and of [K.R.] in front of the Boone County Circuit Court Judge creates a circumstance in which Judge David's impartiality might reasonably be questioned, thus requiring disqualification. . . .
Id. at 400. Newman also argued that because Judge David was allegedly biased in favor of Sondhelm, it logically follows that he would be biased in favor of Sondhelm's friend, K.R.
On June 23, 2006, K.R. filed a proposed order containing findings of fact and conclusions of law. On June 27, 2006, Newman filed a motion to strike K.R.'s proposed findings of fact and conclusions of law, arguing that although the trial court had agreed that the parties could submit a proposed order, it had not specifically asked for proposed findings and conclusions. K.R. responded to Newman's motion to strike on June 30, 2006, arguing that Trial Rule 52 permitted the trial court to issue written findings and conclusions in *310 response to an oral request that K.R. had made on June 14, 2006, and that the trial court was free to disregard the proposed language if it desired.
On August 2, 2006, the trial court denied Newman's motion to strike as well as Newman's second request for Judge David to disqualify himself. On August 16, 2006, the trial court entered an order awarding K.R. $15,000 in attorney fees. Newman now appeals.

DISCUSSION AND DECISION[7]

I. Attorney Fees
K.R. filed a motion seeking a protective order from Newman's discovery request pursuant to Indiana Trial Rule 26(C), which provides:
Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . . The provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion.

(Emphasis added). In response to K.R.'s motion seeking a protective order, Newman filed a motion to compel K.R.'s deposition. Ultimately, the trial court denied Newman's motion to compel and granted K.R.'s motion for a protective order.
After a separate hearing, the trial court awarded K.R. $15,000 in attorney fees pursuant to Trial Rule 37(A)(4), which provides:
(A) Motion for order compelling discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:
* * *
(4) Award of expenses of motion. . . . If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
On appeal, Newman argues that the trial court erred by awarding K.R. attorney fees because Newman's opposition to *311 K.R.'s motion seeking a protective order and Newman's motion to compel the deposition were substantially justified.[8] Alternatively, Newman argues that the $15,000 attorney fee award was excessive and unreasonable.

A. Newman's Opposition to K.R.'s Discovery Motions
The rules of discovery are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." Hatfield v. Edward J. DeBartolo Corp., 676 N.E.2d 395, 399 (Ind.Ct.App.1997). The trial court has broad discretion in ruling on issues of discovery and we will reverse only when the trial court has abused its discretion. Id. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. Trs. of Purdue Univ. v. Hagerman Constr. Corp., 736 N.E.2d 819, 820 (Ind.Ct.App.2000). Although discovery is intended to require "little, if any, supervision or assistance by the trial court," when the goals of this system break down, Indiana Trial Rule 37 provides the trial court with tools to enforce compliance. Hatfield, 676 N.E.2d at 399.
When a protective order is either entered or denied during discovery, a presumption arises that the trial court will also order reimbursement of the prevailing party's reasonable expenses pursuant to Trial Rule 37. Munsell v. Hambright, 776 N.E.2d 1272, 1277 (Ind.Ct.App.2002) (citing Penn Cent. Corp. v. Buchanan, 712 N.E.2d 508, 511 (Ind.Ct.App.1999)). This award of fees is mandatory, subject only to a showing that the losing party's conduct was substantially justified or that other circumstances make an award of expenses unjust. Munsell, 776 N.E.2d at 1277. "A person is `substantially justified' in seeking to compel or in resisting discovery, for purposes of avoiding the sanctions provided by Trial Rule 37(A)(4), if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery." Penn Cent., 712 N.E.2d at 513.
Here, when the trial court granted K.R.'s motion for a protective order, a presumption arose that Newman would be required to reimburse K.R. for her reasonable expenses pursuant to Rule 37. It was Newman's burden to rebut this presumption by proving that her conduct was substantially justified, meaning that reasonable persons could conclude that K.R. would be legally bound to comply with Newman's requested discovery.
Newman claims that her behavior was substantially justified because Sondhelm and her husband Jeff erroneously blamed Newman for behavioral changes in M.S. when, according to Newman, that blame should have been assigned to K.R.'s son. We understand that Newman believes her actions were substantially justified because, in her opinion, K.R.'s deposition may have elicited evidence that someone other than Newman was responsible for the alleged behavioral changes in M.S. However, the origin of any alleged behavioral changes in M.S. was not the issue in the underlying grandparent-visitation action. Instead, the ultimate issue for the trial court to determine was whether court-ordered grandparent visitation *312 in the face of widespread intra-family discord was in the best interests of M.S. and K.S.
Ultimately, it was not an abuse of discretion for the trial court to award K.R. attorney fees because Newman's fervent pursuit of K.R.'s deposition and her vehement opposition to K.R.'s discovery motions were not substantially justified. Instead, our ultimate conclusion hinges on the case-specific facts and circumstances before us, namely, that the underlying action is a grandparent-visitation action to which K.R. is a nonparty and there is no evidence that K.R.'s deposition would have provided admissible, material information for the subsequent grandparent-visitation hearing. Therefore, we cannot find that the trial court abused its discretion by concluding that Newman did not rebut the presumption that K.R. should receive reasonable expenses pursuant to Rule 37.[9]

B. Amount of Award[10]
Because Newman's opposition to K.R.'s discovery motions was not substantially justified, Rule 37 required Newman to pay K.R. reasonable expenses, including attorney fees. Newman argues that the trial court's $15,000 attorney fee award was excessive, unreasonable, and an abuse of discretion.
We review the trial court's attorney fee award for an abuse of discretion. Childress v. Buckler, 779 N.E.2d 546, 553 (Ind.Ct.App.2002). The amount of the trial court's award must be supported by the evidence on the record, and we will only reverse the award if the trial court abuses its discretion. Franklin Coll. v. Turner, 844 N.E.2d 99, 105 (Ind.Ct.App. 2006). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. Id.
Newman first argues that K.R. should only have been allowed to collect expenses incurred "from the time the Subpoena was received by her counsel on January 24, 2006," until the day the trial court issued the protective order ruling in favor of K.R. on February 3, 2006. Appellant's Br. p. 31. Newman argues that K.R. cannot recover for expenses incurred before and after these dates. However, Newman conveniently fails to mention that the subpoena K.R. received on January 24, 2006, was the second subpoena Newman had issued. It is undisputed that K.R. received Newman's first subpoena on January *313 14, 2006. Therefore, pursuant to Newman's own rationale, K.R.'s expenses began to accrue the day she received the first subpoenaJanuary 14.
Newman argues that her liability ended for purposes of Rule 37(A)(4) the moment the trial court issued the protective order in favor of K.R. and denied Newman's motion to compel. While Newman fails to cite relevant Indiana authority supporting her proposition, we acknowledge that our research did not uncover authority articulating the precise time span for which a successful party can collect expenses pursuant to Rule 37(A)(4). While the Rule itself states that a successful litigant is entitled to "reasonable expenses incurred in opposing the motion, including attorney's fees[,]" the parties' arguments force us to resolve whether a party can recover reasonable expenses incurred in preparing for and attending the expense award hearing.
We hold that because Rule 37(A)(4) allows a successful party to obtain reasonable expenses incurred while staving off the other party's discovery demands, it logically follows that a successful party would be able to obtain reasonable expenses incurred in preparing for and attending the expense award hearing. Not only does the expense award hearing stem directly from the discovery sanctions provided for in the Rule, we have previously held that the hearing may actually be required. See South v. White River Farm Bureau, 639 N.E.2d 671, 674 (Ind.Ct.App. 1994) (holding that in a discovery sanction case involving a large amount of claimed expenses, "the trial court must hold a hearing to determine the appropriate amount of fees") (emphasis added).
Turning to the facts of the case before us, it was within the trial court's discretion to award K.R. reasonable expenses that she incurred in obtaining the protective order, defeating Newman's motion to compel, and preparing for and attending the fee hearing. At the hearing, K.R. submitted billing statements and an affidavit from her lead counsel, Alerding, asserting that an award of $34,883.34 would be reasonable based on the time, labor, and skill necessary to properly perform the required legal services. Appellant's App. p. 259-262, 264-280. After the hearing, the trial court ordered that it "declines to award attorney's fees involving multiple attorneys in the same cause" but that a $15,000 attorney fee award was reasonable. Id. at 27-28.
Newman now argues that $15,000 was an unreasonable award for a matter that "is not complex, intricate legal work. In the hierarchy of legal work, it is at the bottom." Appellant's Br. p. 36 (emphasis in original). Newman criticizes the number of attorneys that represented K.R., the length of time they spent on the case, and their "bloated" billing rates. Id. at 35. She argues that K.R.'s "attempt to collect exorbitant sums has no purpose other than to harass, oppress, punish, and silence Dr. Newman regarding the sexual crimes committed and covered up by [K.R.]." Id. at 34.
While we will not belabor facts that we have previously outlined, it is clear that Newman's fervor in immediately seeking K.R.'s deposition was the main factor driving K.R.'s legal expenses. K.R. was an unrepresented nonparty to the underlying grandparent-visitation action when Newman served her with a subpoena that scheduled her deposition less than one week from the date of receipt. K.R. hired Alerding on the next business day, and he and his staff were forced to acquaint themselves with the underlying grandparent-visitation case, which had been pending for more than eighteen months. Alerding frequently consulted with K.R. multiple times *314 a day because they were forced to promptly respond to Newman's unreasonable demands and arduous timelines. For example, two days after K.R. hired Alerding, Newman's counsel demanded that K.R.'s deposition be "scheduled immediately." Appellee's App. p. 42. Five days after that, Newman's counsel threatened to file a motion to compel the deposition if it was not scheduled within four hours of the time Alerding received the correspondence. Id. at 46. This egocentric and unreasonable behavior is hardly the type of amicable cooperation one expects during discovery, especially considering that K.R. had been involved in the case for a mere nine days. See Ind. Trial Rule 26(F) (requiring attorneys involved in a discovery dispute to make a "reasonable effort to reach [an] agreement" informally before bring the dispute into court).
The gravamen of Newman's argument is that too many attorneys represented K.R. and charged too much for the simplistic legal work the tasks required. However, the trial court declined to award K.R. attorney fees for "involving multiple attorneys" and, instead of awarding K.R. the requested $34,883.34, it awarded her what it found to be a reasonable amount $15,000. Appellant's App. p. 28. Because the trial court's $15,000 award is supported by evidence on the record and is not clearly against the logic and effect of the facts and circumstances of the case, we conclude that the trial court did not abuse its discretion.

II. Motion to Disqualify Trial Judge
Newman filed two motions for Judge David to recuse himself, both of which were denied. Newman now argues that Judge David erred by failing to recuse himself for cause because of his "bias." Appellant's Br. p. 46. A party's success on a claim of bias and prejudice hinges on its ability to make a plain showing that unfairness and prejudice existed and controlled the result. Chance v. Chance, 400 N.E.2d 1207, 1212 (Ind.Ct.App.1980).
Newman first argues that Judge David should have recused himself because his impartiality "was impaired based upon [his] appearance of advocacy on behalf of [Sondhelm]" in the grandparent-visitation action. Appellant's Br. p. 46. We previously addressed Newman's claim that Judge David was biased in favor of Sondhelm in the underlying grandparent-visitation action. In that decision, we held:
After immersing ourselves in the record before us on appeal, we find that the trial court's findings do not suggest partiality and are, instead, based on evidence presented at the [grandparent visitation] hearing. It seems that Newman argues that the trial court was biased simply because she does not agree with its findings or its ultimate conclusion. However, Newman's disagreement with the trial court's word choice and its characterization of her familial situation does not prove her bias claim. In fact, the trial court noted the respect it had for Newman in its findings, even though it ultimately ruled against her. . . . Therefore, Newman's bias claim must fail because she cannot show that unfairness and prejudice existed and controlled the result.
Newman, 2007 WL 166483 at *12.
In sum, because Newman still believes that Judge David was biased in favor of Sondhelm, she reasons that he must also have been biased in favor of Sondhelm's friend, K.R. We need not address this argument, which is inherently related to the argument advanced in CV-322, because we have already rejected Newman's claim that Judge David was biased in favor of Sondhelm. Because we have already rejected the argument that serves as the foundation for Newman's argument concerning *315 K.R., her related argument crumbles.
Newman also argues an additional ground for disqualification unique to the proceedings involving K.R. Bingham McHale represented K.R. before the trial court. Bingham McHale also represents Boone County, the county in which Judge David serves as a trial judge, in unrelated matters. Therefore, Newman argues that Judge David is biased because
[p]ursuant to Ind.Code § 36-2-3-10, the Boone County Commissioners may employ and fix the compensation of an attorney to represent and advise the County Commissioners, who can, by statute, make appropriations to pay county judges beyond the amounts paid by the State of Indiana. Thus, Bingham McHale's very direct tie to court appropriations, past, present, and future, could reasonably be seen as having undue influence over the instant proceeding. Bingham McHale's concurrent representation of Boone County and of [K.R.] in front of [Judge David] created a circumstance in which Judge David's impartiality might reasonably be questioned, thus requiring disqualification pursuant to Judicial Canon 3(E)(1).
Appellant's Br. p. 48.
We agree with K.R. that Newman's second argument regarding Judge David's alleged impartiality is "completely devoid of merit." Appellee's Br. p. 37. While we are aware of the statutory authority that allows county commissioners to compensate county judges in addition to State payments, Newman presents no evidence that Judge David has ever received such compensation. Furthermore, Newman presents no evidence that Bingham McHale has ever counseled Boone County regarding appropriations. Judicial Canon 3(E)(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in with the judge's impartiality might reasonably be questioned. . . ." (Emphasis added). Newman's argument is the antithesis of reason. Simply because she disagrees with the outcome of the proceedings that occurred before Judge David does not mean that he is biased against her and does not give Newman the authority to advance outlandish allegations of this nature.[11]

III. Appellate Attorney Fees
K.R. requests that we award her reasonable appellate attorney fees incurred in responding to Newman's appeal. It logically follows that an award of reasonable expenses pursuant to Rule 37(A)(4) includes the reasonable expenses incurred by the party in defending the award on appeal. See City of Hammond v. Marina Entm't Complex, Inc., 681 N.E.2d 1139, 1145 (Ind.Ct.App.1997) (holding that a statutory provision entitling a successful party to reasonable attorney fees includes "legal services incurred defending a fee award" on appeal). Furthermore, the Seventh Circuit Court of Appeals, when construing Federal Rule of Civil Procedure 37(A)(4),[12] has held that *316 when a district court awards reasonable expenses to a prevailing party that obtained a protective order, "the costs of defending the award on appeal are added to that award as of course." Rickels v. City of South Bend, 33 F.3d 785, 788 (7th Cir.1994). While we acknowledge that the Rickels court's ruling was based on the federal counterpart to Indiana Rule 37, we have previously held that Federal Rule 37 is "essentially identical" to our version. Ledden v. Kuzma, 858 N.E.2d 186, 190 (Ind.Ct.App.2006). Therefore, we grant K.R.'s request for appellate attorney fees and remand this cause to the trial court for a determination of the reasonable amount of her appellate attorney fees.
We affirm the judgment of the trial court in all respects and remand this cause with instructions to calculate K.R.'s reasonable appellate attorney fees and order Newman to pay that amount.
DARDEN, J., and ROBB, J., concur.
NOTES
[1] On July 9, 2007, Newman filed a motion to publish our memorandum decision in CV-322, arguing that the decision is worthy of precedential value. Newman contends that her motion is timely because our Supreme Court denied transfer in that case on June 13, 2007, and her motion was filed within thirty days of that action. However, we do not grant motions to publish that are filed with our court more than thirty days after the handdown date of our decision so that our Supreme Court is aware whether the underlying decision is for publication or not for publication when it rules on a party's petition for transfer. See Ind. Appellate Rule 65(B) (providing that a motion to publish shall be filed with the Court of Appeals within thirty days of the entry of that court's decision). Because Newman's motion to publish CV-322 is untimely, we are contemporaneously entering an order denying that motion.
[2] In an order dated November 27, 2006, we acknowledged that both CV-322 and the instant action, cause number 29A02-0609-CV-753 (CV-753), stem from the same lower cause number. However, because CV-322 was fully briefed and concerned the merits of the trial court's order denying grandparent visitation and CV-753 was not yet fully briefed and concerned a separate issue involving a nonparty, we declined to consolidate the two appeals. However, we ordered our Court Administrator "to assign CV-753 to the same writing panel of judges to which CV-322 becomes assigned." 11/27/06 Order at 2. Therefore, CV-753 has been assigned to the CV-322 writing panelChief Judge John G. Baker, Judge Carr L. Darden, and Judge Margret G. Robb.
[3] We hereby deny Newman's April 20, 2007, motion to vacate our previous order maintaining the documents in this cause under seal. Therefore, we will refer to the nonparty involved in this action as "K.R." and to her son as "J.R."
[4] Newman's counsel for both CV-322 and CV-753 has been her husband, Lawrence T. Newman (Lawrence).
[5] Indiana Trial Rule 45(G) requires, in relevant part, that

[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person who shall be required to attend outside his county of residence as provided in section (C), and by so tendering to him the fees for one [1] day's attendance and the mileage allowed by law.
[6] The unsigned letter that Newman attests is from Shirazi does not identify an author.
[7] On May 16, 2007, Newman filed a motion to strike paragraphs seven through ten of K.R.'s response in opposition to a consolidated motion Newman filed in this court on April 20, 2007. Specifically, Newman argues that those paragraphs raise new arguments K.R. had not previously made to our court. Concluding that the four contested paragraphs do not raise new arguments, we deny Newman's motion to strike.

On May 24, 2007, K.R. filed a motion to strike materials contained in Newman's request for leave to file an amended reply brief, which Newman filed on April 20, 2007. Pursuant to Indiana Appellate Rules 34 and 42, K.R. had fifteen days to file a motion to strike in response to Newman's request for leave to amend the reply brief. Therefore, K.R.'s motion was untimely and shall be denied as such. We also deny Newman's request for leave to amend the reply brief she submitted on April 16, 2007.
In their motions, both parties request sanctions. While we deny Newman's request for sanctions, we grant K.R.'s request, inasmuch as the ultimate disposition of this case awards K.R. reasonable appellate attorney fees, which includes expenses for drafting and responding to appellate motions.
[8] While Newman argues that her opposition to K.R.'s discovery motions was substantially justified, she does not make a separate argument that the trial court should not have granted K.R.'s motions. Therefore, we need not address that issue.
[9] Newman makes a related argument:

[A]n award of expenses to [K.R.] would not be justified in this case because "other circumstances make an award of expenses unjust." T.R. 37(A)(4). [K.R.] is the mother of the teenage boy who molested Newman's granddaughter. . . . Additionally, the award of expenses to [K.R.] in this case is unjust because it is an extreme financial hardship on Newman . . . "
Appellant's Br. p. 27, 31. We first note that the only evidence supporting Newman's claim that K.R.'s son "molested" M.S., id. at 27, is that J.R. "tugg[ed] on [M.S.'s] pants" on at least two occasions, appellant's app. p. 206. We emphasize that regardless of Newman's contentions to the contrary, J.R.'s guilt was not at issue in the underlying grandparent-visitation action; thus, awarding K.R. attorney fees was not unjust simply because of the nature of Newman's allegations. As for Newman's financial hardship claim, she presented no evidence to the trial court to support this bald assertion. In sum, the circumstances of this case do not make the trial court's attorney fee award unjust.
[10] Newman briefly argues that the trial court erred by failing to strike K.R.'s proposed findings of fact and conclusions of law. Even assuming for argument's sake that the trial court should have struck the proposed findings and conclusions before entering its order awarding attorney fees, it did not adopt K.R.'s proposed language in its order. Therefore, Newman cannot show prejudice.
[11] We remind Newman's counsel that, as a licensed attorney, he is bound by the Indiana Rules of Professional, including Rule 3. 1, which prohibits an attorney from asserting frivolous issues for which there is no basis in fact. A comment to that Rule states in part, "[t]he advocate has a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed."
[12] Federal Rule of Civil Procedure 37(A)(4) provides, in relevant part:

If the motion [to compel discovery] is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.